## SETTLEMENT AGREEMENT AND RELEASE

This Confidential Settlement Agreement and Release ("Agreement") is made and entered into by and between Ramon Magallan-Zepeda ("Plaintiff"), on the one hand, and Pancho's Family Restaurant, LLC ("Pancho's") and Claudia Saltijeral ("Saltijeral," and together with Pancho's, collectively, "Defendants"), on the other.

WHEREAS, on June 25, 2015, Plaintiff filed a Complaint against Defendants entitled *Ramon Magallan-Zepeda, and on behalf of other employees similarly situated v Pancho's Family Restaurant, LLC and Claudia Saltijeral, individually* Case No. 1:15-cv-5578, in the United States District Court for the Northern District of Illinois, in which they asserted claims pursuant to the Fair Labor Standards Act and other claims (hereinafter referred to as the "Lawsuit");

WHEREAS, Plaintiff and Defendants seek to settle fully and finally all differences between them, including, but in no way limited to, any differences embodied in or related to the Lawsuit, as well as all other claims Plaintiff has or may have against Defendants arising prior to the Effective Date of the Agreement;

NOW THEREFORE, as consideration for the mutual covenants and promises herein contained, and other good and valuable consideration, and to avoid unnecessary litigation, it is hereby agreed by and between the parties as follows:

1.     Non-Admission of Liability.  This Agreement shall not be construed as an admission by Defendants that they have acted wrongfully with respect to Plaintiff or any other person, or that Plaintiff has any rights whatsoever against Defendants, and Defendants specifically disclaims any liability to, or wrongful acts against Plaintiff.  Furthermore, this Agreement does not constitute: a determination or admission that any group of similarly-situated employees exists to maintain a class or collective action under the Fair Labor Standards Act ("FLSA"); an adjudication of the merits of the Lawsuit; or an adjudication of any other matters released in this Agreement.  Accordingly, this Agreement cannot be used in any way to imply or evidence that Plaintiff had prevailed or that Defendants have engaged in any wrongdoing.

2.     Approval of Settlement and Dismissal of Litigation.  In consideration for the promises made in this Agreement, Plaintiff consents to, and this Agreement is expressly conditioned upon, the Court's approval of the settlement and dismissal of Plaintiff's claims with prejudice, in such a manner that the Court retains jurisdiction to enforce the Parties' settlement until a date certain after the Monetary Payments set forth herein are due to be paid.

3.     Monetary Payments.  Defendants will pay the amounts referenced below within thirty (30) calendar days from the later of (1) the date of the Court's approval of the settlement or (2) the Court's dismissal of Plaintiff's claims with prejudice, provided Plaintiff has provided by that date an updated Employee's Withholding Allowance Certificate (IRS Form W-4) and Plaintiff's counsel has provided a fully-executed Request for Taxpayer Identification Number and Certification (IRS Form W-9).  All consideration amounts and payments identified in this paragraph are amounts to which Plaintiff is not otherwise entitled, absent resolution of the Lawsuit.  The Settlement Amount shall be paid as follows:

(1) Seven Thousand Dollars ($7,000) shall be paid as follows:

    a. A check made payable to Ramon Magallan-Zepeda in the gross amount of One Thousand Nine Hundred Thirty-Eight Dollars and No Cents ($1,938.00), representing alleged unpaid wage damages, less normal and ordinary payroll deductions required by law, to be reported on an IRS Form W-2;

    b. A check made payable to Ramon Magallan-Zepeda in the gross amount of One Thousand Nine Hundred Thirty-Eight Dollars and No Cents ($1,938.00), representing alleged liquidated damages, from which no tax withholdings shall be made, to be reported on an IRS Form 1099;

    c. A check for attorneys' fees, costs, and expenses payable to Consumer Law Group, LLC, 6232 North Pulaski, Suite 200, Chicago, Illinois 60646, in the amount of Three Thousand One Hundred Twenty Four Dollars and no/100 ($3,124.00) to be reported on IRS Form 1099 to Consumer Law Group, LLC in accordance with IRS regulations ("Attorney's Fees").

Defendants agree to forward the aforementioned checks to Plaintiff's counsel. The parties agree that it is the responsibility of Plaintiff's counsel to remit and disburse all sums owed to Plaintiff under the terms of the Agreement. In the event that it is subsequently determined by any taxing authority that Plaintiff or Plaintiff's counsel owes any additional taxes with respect to any money distributed under this Agreement, the determination of any tax liability is between Plaintiff or Plaintiff's counsel and the taxing authority, and Defendants will not be responsible for the payment of such taxes, including any interest and/or penalties.

    4.   <u>Discharge of Obligations</u>. It is expressly understood by Plaintiff and Plaintiff's counsel that the obligations of Defendants contained in this Agreement shall be in lieu of any and all amounts to which Plaintiff or Plaintiff's counsel is now, or may become, entitled to, based upon any claim whatsoever arising out of Plaintiff's employment with Defendants or otherwise (including special, general, exemplary, or liquidated damages, attorneys' fees, interest, expenses, and costs actually incurred). Plaintiff further agrees that the terms of the settlement are fair and reasonable, including the amounts paid to Plaintiff as well as the fees paid to Plaintiff's counsel. Plaintiff agrees that the monetary payments described herein compensate him for all amounts that could properly be due to him for the claims filed in the Lawsuit.

    5.   <u>Confidentiality</u>. Plaintiff agrees that he will keep confidential and will not, except as required by law, disclose to any person or entity the fact of this settlement, the existence of this Agreement, or any understandings, agreements, provisions and/or information contained herein, nor will he disclose to any third party the content of the negotiations resulting in this Agreement; *provided, however*, that in response to any inquiries about this matter, Plaintiff will respond only that the matter has been resolved and shall say nothing further. Notwithstanding these restrictions, Plaintiff may communicate with his spouse, his counsel, his tax advisors, or otherwise as required by law without violating this confidentiality provision. Nothing herein will prevent the Parties from publically filing this Agreement is necessary to obtain court approval.

6.     Plaintiff's Release of Claims.  As a material inducement to Defendants to enter into this Agreement, Plaintiff hereby irrevocably and unconditionally releases, acquits, and forever discharges Defendants, their respective owners, members, investors, shareholders, management companies, consultants and insurers, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, divisions, parents, subsidiaries, affiliates (and agents, directors, officers, employees, representatives, and attorneys of such divisions, parents, and subsidiaries of any such affiliates), benefit plans, plan fiduciaries and/or administrators, and all persons acting by, through, under, or in concert with any of them, including any party that was or could have been named as a defendant in the Lawsuit (collectively and hereinafter "Released Parties") from any and all charges, complaints, claims, liabilities, benefits, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, and expenses (including attorneys' fees and costs actually incurred) of any nature whatsoever, known or unknown, suspected or unsuspected, including, but not limited to, rights arising out of alleged nonpayment of wages, violations of any contracts, express or implied, or any covenant of good faith and fair dealing, express or implied, or any tort, or any federal, state, or other governmental statute, regulation, or ordinance, including, but not limited to, claims under the FLSA or any state statute. *Provided, however*, nothing herein shall release or preclude any claims that arise after execution of this Agreement or any claims that cannot be waived by operation of law, including the right to file a charge with or participate in an investigation conducted by the United States Equal Employment Opportunity Commission ("EEOC") or the National Labor Relations Board ("NLRB").  Except where otherwise prohibited by law, the consideration provided to Plaintiff in this Agreement shall be the sole relief provided to him for the claims that are released herein, and Plaintiff will not be entitled to recover, and will agree to waive, any monetary benefits or recovery against the Released Parties in connection with any such claim, charge or proceeding without regard to who has brought such Complaint or Charge.  If requested by Defendants, Plaintiff will also withdraw with prejudice his request for Class and Conditional Certification.  Plaintiff will cause the dismissal with prejudice of all claims he has asserted against Defendants.

7.     Compliance with the Older Workers Benefit Protection Act.  Plaintiff understands that the release set forth in Paragraph 6 includes a release of any claims they may have against any of the Released Parties, up to the Effective Date of this Agreement, under the Age Discrimination in Employment Act ("ADEA"), as amended by the Older Workers Benefit Protection Act.  Plaintiff understands and acknowledges that:

(i)     Defendants provided Plaintiff, at his option, twenty-one (21) days from the date this Agreement was first presented to Plaintiff in order to consider this Agreement;

(ii)     Plaintiff has carefully read and fully understand all of the terms and provisions of this Agreement;

(iii)     Plaintiff understands that the ADEA is a federal statute that prohibits discrimination on the basis of age in employment, benefits, and benefit plans;

(iv)     Plaintiff is, through this Agreement, waiving, releasing, and forever giving up any and all claims they may have against the Released Parties that may have existed on or prior to the Effective Date of this Agreement;

(v)     Plaintiff knowingly and voluntarily agrees to all of the terms and provisions of this Agreement;

(vi)     Plaintiff knowingly and voluntarily intends to be legally bound by all of the terms and provisions of this Agreement;

(vii)     Plaintiff has been advised, in writing, to consult with an attorney of his choosing before executing this Agreement;

(viii)     Plaintiff is receiving consideration for his waiver of any and all claims under the ADEA that is in addition to anything of value to which he is already entitled;

(ix)     Plaintiff has a period of seven (7) days following execution of this Agreement to revoke this Agreement ("Revocation Period") by delivering a letter of revocation to Defendants' counsel, The Fish Law Firm, P.C. via facsimile at 630-778-0400 within the Revocation Period; and

(x)     Plaintiff has been and hereby is advised in writing that this Agreement shall not become effective and enforceable until the Revocation Period has expired.

8.     <u>Effective Date</u>.  The parties agree that this Agreement will become effective if, and only if: (1) Plaintiff signs this Agreement, (2) the Court approves the settlement, (3) the Court grants an Order dismissing Plaintiff's claims with prejudice, and (4) the Revocation Period has expired.  The "Effective Date" of the Agreement is the date that the last of these four events occurs.

9.     <u>Costs and Attorneys' Fees</u>.  No party or any attorneys acting for, or purporting to act for the parties may recover or seek to recover any amounts for fees, costs, or disbursements from any other party except as expressly provided herein.

10.     <u>Plaintiff's Knowing and Voluntary Waiver of Unknown Claims</u>.  For the purpose of implementing a complete release and discharge of Released Parties for the specific claims described in Paragraph 6, Plaintiff expressly acknowledges that this Agreement is intended to include all claims described in Paragraph 6 whether or not Plaintiff know about the claims at the time Plaintiff executes this Agreement.

11.     <u>Plaintiff's Non-Cooperation With Third Parties; Non-Disparagement</u>.  As an inducement for Defendants to enter into this Agreement, and as a material condition thereof, Plaintiff shall: (i) not assist or cooperate with any third party in any complaint, claim, demand, cause of action, charge, or lawsuit of any kind whatsoever against the Released Parties relating to the allegations in the Lawsuit without an order issued by a court of competent jurisdiction; (ii) not encourage any other parties or attorneys to commence a claim or proceeding against the Released Parties; (iii) not refer any current or former employee of the Released Parties considering a claim or claims to an attorney; and (iv) not communicate about the Released Parties in any defamatory manner with respect to any matter.  Nothing in this Agreement shall preclude Plaintiff from cooperating with any governmental investigations by the EEOC, NLRB, or any other government agency charged with enforcement of laws pertaining to the regulation of the workplace.

12. <u>Arm's Length Transaction</u>. The parties represent and agree that they have thoroughly discussed all aspects of this Agreement with their attorneys and have carefully read and fully understand all of the provisions of this Agreement, and that they are voluntarily entering into this Agreement.

13. <u>Entire Agreement</u>. This Agreement constitutes the entire agreement between the parties and a complete understanding among the parties. The parties each acknowledge that, in entering into this Agreement, they are not relying upon any representations, warranties, or commitments made by anyone except as specifically set forth herein. This Agreement may be amended only by an instrument in writing duly executed by the parties and no other promises or agreements, either express or implied, shall be binding unless signed in writing by the parties.

14. <u>Non-Use</u>. This Agreement may not be used as evidence in any subsequent proceeding of any kind (without Defendants' written consent), except in a proceeding that a party institutes alleging a breach of this Agreement or as required by law.

15. <u>Enforcement</u>. Any breach of a term, provision, or obligation of this Agreement by any party shall entitle the other to seek enforcement of such term, provision, or obligation in a court of law of competent jurisdiction, and shall entitle the prevailing party to an award of the reasonable attorneys' fees and costs incurred in such proceeding.

16. <u>Severability</u>. To the extent that any portion of this Agreement may be held to be invalid or legally unenforceable by a court of competent jurisdiction, the parties agree that the remaining portions of the relevant paragraph and the remainder of the Agreement shall not be affected and shall be given full force and effect.

17. <u>Counterparts</u>. This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original and all of which together shall constitute one and the same instrument.

18. <u>Ownership of Claims</u>. Plaintiff hereby warrants and represents that he owns all of the claims that are the subject of this Agreement, including any and all of the claims arising from the Lawsuit, and that Plaintiff has the sole and exclusive right to settle and compromise such claims.

19. <u>No Representations</u>. Plaintiff represents and acknowledges that in executing this Agreement, he does not rely and has not relied upon any representation or statement not set forth herein made by Defendants or by any of Defendants' agents, representatives, or attorneys with regard to the subject matter, basis, or effect of this Agreement or otherwise.

20. <u>No Waiver</u>. The failure to enforce at any time, or for any period of time, any one or more of the terms of this Agreement shall not be a waiver of such terms or of the right thereafter to enforce each and every term of this Agreement.

***PLEASE READ AND CONSIDER THIS AGREEMENT CAREFULLY BEFORE EXECUTING. THIS AGREEMENT INCLUDES A GENERAL RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS.***

IN WITNESS WHEREOF, the parties executed this Agreement on the dates shown below.

Dated: _10 - 16 - 15_                    _____
                                          Ramon Magallan-Zepeda


PANCHO'S FAMILY RESTAURANT, LLC

Dated: 10 - 19 · 15                       _____
                                          Pancho's Family Restaurant, LLC

                                          Name: _Claudia Saltijeral_
                                          Title: _Operations manager_

Dated: 10 - 19 · 15                       _____
                                          Claudia Saltijeral

- 6 -